UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| TERRY W. SALDIN,<br><br>          Plaintiff,<br><br>  vs.<br><br>HOLO HOLO CHARTERS, INC., JESSICA RICKARD, JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10, DOE GOVERNMENTAL UNITS 1-10, DOE ENTITIES 1-10,<br><br>          Defendants. | CIV. NO. 24-00306 LEK-KJM |

**ORDER GRANTING PLAINTIFF'S MOTION**
**<u>TO REMAND TO CASE TO STATE COURT</u>**

Before the Court is Plaintiff Terry W. Saldin's ("Saldin") Motion to Remand Case to State Court ("Motion"), filed on August 21, 2024. [Dkt. no. 9.] Defendants Holo Holo Charters, Inc. ("Holo Holo") and Jessica Rickard ("Rickard" and collectively "Defendants") filed their memorandum in opposition on October 11, 2024, and Saldin filed his reply on October 18, 2024. [Dkt. nos. 16, 17.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). Saldin's Motion is granted for the reasons set forth below.

## BACKGROUND

Saldin filed her Complaint in the State of Hawai`i Circuit Court of the Fifth Circuit ("state court") on July 17, 2024, [Notice of Removal, filed 7/22/24 (dkt. no. 1), Exh. A (Complaint).]

Saldin alleges that, on July 22, 2024, she was a "non-seafarer" and a "passenger for hire" on a sunset dinner cruise aboard the vessel Holoholo ("the Vessel"), which is owned and operated by Holo Holo. [Complaint at ¶ 2 (quoting Yamaha Motor Corp. v. Calhoun, 516 U.S. 199 (1996)); id. at ¶¶ 4, 20.] The cruise departed from Port Allen on the Island of Kaua`i and the planned course was up the Napali Coast and back. [Id. at ¶ 20.] At all times relevant to this case, Rickard was Holo Holo's employee and/or agent and the Vessel's master/captain. [Id. at ¶ 5.] Holo Holo regularly transports persons aboard the Vessel over navigable waters. [Id. at ¶ 14.]

Shortly after the July 22, 2022 cruise began, Rickard announced that all vessels in the area had to stop because the United States Navy was conducting missile launches. This delayed the Vessel for approximately thirty minutes. [Id. at ¶ 21.] Rickard then announced that the Vessel had been given permission to proceed, and that they were "'going to make up for lost time.'" [Id. at ¶ 23.] Saldin alleges the Vessel proceeded at a speed greater than before it stopped for the missile tests and

therefore the Vessel "quickly outdistanced other vessels in the area." [Id. at ¶ 24.]

Saldin was seated and holding on to the handrail of the seat in front of her. [Id. at ¶ 25.] The Vessel "jolted" when it "encountered a predictable sea state" at the elevated speed, and this caused Saldin to be thrown "into the air and violently slamm[ed] . . . back down on top of the handrail she had been holding onto" ("the Incident"). [Id. at ¶ 26.] As a result of the Incident, Saldin "sustained immediate pain and multiple fractures to her left leg." [Id. at ¶ 27.] Saldin alleges the sea state that the Vessel encountered during the Incident was predictable or knowable because, "[p]rior to the missile launch, a NOTICE OF HAZARDOUS OPERATIONS was made advising mariners of range operations in the vicinity of the [Vessel's] expected route." [Id. at ¶ 22 (emphasis in original).]

The Complaint alleges the following claims: negligence; [id. at ¶¶ 28-34;] gross negligence; [id. at ¶¶ 35-40;] negligent infliction of emotional distress; [id. at ¶¶ 41-42;] intentional infliction of emotional distress; [id. at ¶¶ 43-44;] negligent misrepresentation; [id. at ¶¶ 45-47;] and a claim imposing respondeat superior liability, [id. at ¶¶ 48-49]. Saldin seeks general and special damages, attorney's fees and

costs, prejudgment interest, and any other appropriate relief. [Id. at pg. 10.]

When Defendants filed the Notice of Removal on July 22, 2024, they had not yet been served with the Complaint.[1] [Notice of Removal at ¶ 3.]

Defendants assert there is diversity of citizenship because, according to the Complaint, Saldin is a citizen of California. See id. at ¶¶ 5, 13; see also Complaint at ¶ 1. Holo Holo and Rickard are citizens of Hawai`i. See Notice of Removal at ¶¶ 6-7. Defendants acknowledge that the Complaint does not specify the amount of damages that Saldin is seeking "because Hawaii law prohibits *ad damnum* clauses in complaints." [Id. at ¶ 10.] The Complaint states only that that damages Saldin suffered "are in excess of the jurisdictional requirements of [the state court]." See Complaint at ¶ 9. With certain exceptions not relevant here, State of Hawai`i circuit courts have exclusive jurisdiction over civil actions where the damages claimed exceed $40,000, and they have concurrent jurisdiction with the State of Hawai`i district courts when the amount in

---

[1] Defendants were subsequently served on August 22, 2024. See Declaration of Counsel Re Service of Process, filed 8/27/24 (dkt. no. 11), Exhs. A & B (a set of the Return and Acknowledgement of Service material for each defendant, filed in the state court on 8/23/24).

controversy is between $10,000 and $40,000. See Haw. Rev. Stat. § 604-5(a).

Defendants point out that Saldin alleges that, as a result of the Incident, "she 'suffered serious and permanent injuries, including but not limited to significant fractures to her left fibula and tibula [sic] requiring surgical intervention and the permanent installment of surgical hardware.'" [Notice of Removal at ¶ 8 (alteration in Notice of Removal) (quoting Complaint at ¶¶ 32, 38).] Defendants also point out Saldin alleges that, because of these injuries, "she 'has experienced and will continue to experience physical, nervous, mental, psychological, and emotional pain and suffering[,]' and 'was forced to incur, and will continue to be forced to incur in the future, medical, surgical, hospital, pharmaceutical, and therapeutic costs and expenses[.]'" [Id. at ¶ 9 (alterations in Notice of Removal) (quoting Complaint at ¶¶ 33-34, 39-40).] In addition, although the Complaint does not state that Saldin is seeking exemplary/punitive damages, Defendants argue it can be inferred that she is seeking those damages because Saldin asserts a gross negligence claim. [Id. at ¶ 11.] Defendants argue that it can be inferred from all of the allegations in the Complaint that Saldin is seeking damages in excess of $75,000. [Id. at ¶ 12.]

In the instant Motion, Saldin argues the case should be remanded because removal was improper.[2] [Motion, Mem. in Supp. at 2.] Saldin argues the Notice of Removal is ineffective because it fails to identify what specific provision of Title 28 United States Code Section 1441 applies. Saldin contends diversity jurisdiction does not exist, and removal is precluded because of the savings to suitors clause in Title 28 United States Code Section 1333(1). See id. at 3-4.

## STANDARDS

"A civil case commenced in state court may, as a general matter, be removed by the defendant to federal district court, if the case could have been brought there originally." Martin v. Franklin Capital Corp., 546 U.S. 132, 134 (2005); see also 28 U.S.C. § 1441(a).

Relevant to the instant case, "[j]urisdiction founded on 28 U.S.C. § 1332 requires that the parties be in complete diversity and the amount in controversy exceed $75,000." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam).

> "A federal court is presumed to lack jurisdiction in a particular case unless the

---

[2] The Motion first argues Saldin is statutorily entitled to an award of removal-related attorney's fees and costs. [Motion, Mem. in Supp. at 2.] However, Saldin later states she is not pursuing an expense award. See id. at 10. This Court therefore does not construe the Motion as seeking an award of removal-related expenses.

> contrary affirmatively appears." Stock W., Inc. v. Confederated Tribes of the Colville Rsrv., 873 F.2d 1221, 1225 (9th Cir. 1989). "Removal and subject matter jurisdiction statutes are 'strictly construed . . . .'" Hawaii ex rel. Louie v. HSBC Bank Nev., N.A., 761 F.3d 1027, 1034 (9th Cir. 2014) (quoting Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031, 1034 (9th Cir. 2008)).
>
> Generally, a "defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." Id. (quoting Luther, 533 F.3d at 1034). . . .

Lake v. Ohana Mil. Cmtys., LLC, 14 F.4th 993, 1000 (9th Cir. 2021) (first ellipsis in Lake).

## DISCUSSION

### I. Preliminary Issues

Defendants argue that this Court should deny the Motion and award Defendants the attorney's fees and costs they incurred in responding to the Motion because Saldin's counsel failed to comply with the Local Rule 7.8 prefiling conference requirement. [Mem. in Opp. at 3-7.] Saldin responds that the failure to comply with Local Rule 7.8 was inadvertent, [Reply, Declaration of Counsel at ¶ 5,] and Saldin argues counsel's post-filing email correspondence shows that neither side was going to retreat from its position about the propriety of removal, [Reply at 2-3 (citing Mem. in Opp., Declaration of Normand R. Lezy ("Lezy Decl."), Exh. 1).]

7

Local Rule 7.8 clearly requires a prefiling conference, but the rule does not address the penalty for noncompliance. Some decisions in this district have denied a motion that did not comply with Local Rule 7.8, while others have ruled on the motion in spite of the filing party's noncompliance. See, e.g., Bros. Healthcare, Inc. v. Brian Carter, Inc., Case No. 21-cv-383-DKW-RT, 2022 WL 1046287, at *2 (D. Hawai`i Apr. 7, 2022) (denying the motion "without prejudice to re-filing upon Defendant's compliance with Local Rule 7.8"); David v. Betts, CIVIL NO. 20-00002 JMS-WRP, 2023 WL 1069683, at *1 n.1 (D. Hawai`i Jan. 27, 2023) ("Although failure to comply with Local Rule 7.8 could result in striking the Motion, the Court nevertheless addresses and denies the Motion for the reasons detailed below." (citation omitted)).

These and similar cases indicate that this Court has the discretion to determine what response to a Local Rule 7.8 violation is appropriate under the particular circumstances of the case. Here, the parties engaged in a post-filing discussion of the issues, which clearly indicated that a resolution of the dispute without a court ruling was not possible. See Lezy Decl., Exh. 1. Thus, it is unlikely that a prefiling conference would have avoided the filing of the Motion or narrowed the issues raised therein. Further, in light of the time limits associated with the filing of a motion for remand, Saldin would not be able

to file a new motion if the Motion was denied because of the Local Rule 7.8 violation. See 28 U.S.C. § 1446(b)(1). While this Court does not condone the failure by Saldin's counsel to comply with the applicable court rules, this Court will consider the merits of Saldin's Motion in spite of Saldin's failure to comply with Local Rule 7.8.

This Court also rejects Saldin's preliminary argument that Defendants' Notice of Removal is deficient because it fails to identify the specific provision of Section 1441 that was the basis for removal. Paragraph 13 asserts original jurisdiction exists pursuant to Title 28 United States Code Section 1332. [Notice of Removal at ¶ 13.] The Notice of Removal also states that it was filed pursuant to Sections 1332, 1441, and 1446. [Id. at pg. 2.] Reading page 2 and paragraph 13 together, it is clear that Section 1441(b) is the basis for removal. The Motion is therefore denied as to its request for remand on the ground that the Notice of Removal fails to identify the basis of removal.

**II. Diversity Jurisdiction**

The parties do not dispute that there is diversity of citizenship amongst them. See 28 U.S.C. § 1332(a)(1). The Complaint does not specify the amount in controversy except to state that it exceeds the jurisdictional amount for the state circuit courts, *i.e.* $10,000 or more if it invokes the state

9

circuit court's concurrent jurisdiction with the state district courts and $40,000 if it invokes the circuit court's exclusive jurisdiction. See Complaint at ¶ 9; Haw. Rev. Stat. § 604-5(a). Defendants argue it can be inferred from the allegations of the Complaint that the $75,000 amount in controversy requirement is satisfied. See Notice of Removal at ¶ 12; see also § 1332(a).

Saldin has not contested Defendants' arguments about the amount in controversy. Having reviewed the Complaint, the Notice of Removal, and the filings related to the Motion, this Court has no reason to question Defendants' amount-in-controversy allegations. This Court therefore accepts Defendants' allegation that the amount in controversy in this case exceeds $75,000, excluding interests and costs. See Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 87 (2014) ("[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."). Thus, the requirements for diversity jurisdiction are met in this case.

However, Title 28 United States Code Section 1441(b)(2) states: "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the

State in which such action is brought." Section 1441(b)(2) is known as the "Forum Defendant Rule." See, e.g., Casola v. Dexcom, Inc., 98 F.4th 947, 950 (9th Cir. 2024).

In this case, the issue is whether the forum defendant rule is rendered inapplicable because Defendants invoked the snap removal doctrine.

> The so-called "snap removal" doctrine developed based on interpretation of the phrase "properly joined and served" within § 1441(b)(2). The argument under snap removal is that in a case where removal on the basis of diversity jurisdiction is otherwise precluded by the forum defendant rule, any defendant may remove the case to federal court so long as they do so before any in-state defendant has been served. Texas Brine [Co. v. Am. Arb. Ass'n], 955 F.3d [482,] 485 [(5th Cir. 2020)]. Importantly, the rules contained in § 1441(b)(2) are procedural rather than jurisdictional; existing "[s]eparate and apart from the statute conferring diversity jurisdiction." Lively [Wild Oats Mkts., Inc.], 456 F.3d [933,] 939 [(9th Cir. 2006)].

Trotta v. URS Fed. Servs., Inc., 532 F. Supp. 3d 985, 989–90 (D. Hawai`i 2021) (footnote omitted). The district court in Trotta noted that:

> District courts are split as to whether the plain language of § 1441(b)(2) allows snap removal at all. See, e.g., Flandro v. Chevron Pipe Line Co., 2019 WL 1574811, at *6 (D. Utah Apr. 11, 2019); LMN Consulting, Inc. v. DaVincian Healthcare, Inc., 2019 WL 2565281, at *2 (W.D. Tex. Mar. 29, 2019); Magallan v. Zurich Am. Ins. Co., 228 F. Supp. 3d 1257, 1259 (N.D. Ok. 2017). But every circuit court to have addressed the issue to date has decided that the statute allows snap removal. See Texas Brine, 955 F.3d at 484-87; Gibbons v. Bristol-Myers Squibb Co., 919 F.3d 699 (2d Cir.

11

> 2019); Encompass Ins. Co. v. Stone Mansion Rest. Inc., 902 F.3d 147 (3d Cir. 2018). Here, the court need not decide this issue because diversity jurisdiction does not exist in the first instance.

Id. at 990 n.2.

The Ninth Circuit has recently observed that "the final chapter on snap removals in the Ninth Circuit remains to be written." Casola, 98 F.4th at 965. In Casola, the Ninth Circuit addressed the practice in California of "super snap removals," holding that a notice of removal filed in a federal district court before the complaint was officially filed in the California state court had no legal effect. Id. The Ninth Circuit expressly declined to address whether snap removals were permitted. See id. at 964 ("First, to resolve these appeals arising from pre-**filing 'super** snap removals,' it is not necessary to decide whether pre-service snap removals are permissible under 28 U.S.C. § 1441(b)(2). Second, and more importantly, § 1447(d) bars us from addressing the correctness of the district court's implied finding that snap removals are not allowed." (emphasis in original) (footnote omitted)).

Based on Casola and having considered Trotta,[3] this Court concludes that it is still an open question whether snap

---

[3] This case does not involve the type of gamesmanship present in U.S. Bank National Ass'n v. Martin, where the case was remanded based on the forum defendant rule in spite of the

(. . . continued)

removal is recognized in this district court. In light of the strict construction of removal statutes, this Court declines to read Section 1441(b)(2) as allowing snap removal to avoid the forum defendant rule. Because the forum defendant rule applies in this case, Defendants' removal of this case based on diversity jurisdiction was improper.

### III. Savings-to-Suiters Clause

Finally, this Court notes that, based on the events of the Incident, admiralty jurisdiction would apply, except for Saldin's invocation of Title 28 United States Code Section 1333(1). See Complaint at ¶ 10. Section 1333(1) states: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." This is known as the "savings to suitors" clause, and it

> "leave[s] state courts 'competent' to adjudicate maritime causes of action in proceedings 'in personam,' that is, where the defendant is a person, not a ship or some other instrument of navigation." Madruga v. Superior Court of California, 346 U.S. 556, 560–61, 74 S. Ct. 298, 301, 98 L. Ed. 290 (1954). The savings to suitors

---

fact that Martin filed the notice of removal before she was served. See Civ. 15-00061 DKW-BMK, 2015 WL 2227792, at *5 (D. Hawai`i April 23, 2015) ("The Court cannot condone this type of gamesmanship, where Ms. Martin manufactures the reason for U.S. Bank's failure to serve the December 2014 State Complaint, then removes the case and argues that the forum defendant rule should not apply because U.S. Bank has not effected service.").

>       clause also permits the plaintiff to bring an
>       action "at law" in the federal district court,
>       provided the requirements of diversity of
>       citizenship and amount in controversy are met. In
>       re Chimenti, 79 F.3d 534, 537 (6th Cir. 1996)
>       (quoting 14 Charles A. Wright, Arthur R. Miller,
>       & Edward H. Cooper, Federal Practice and
>       Procedure: Jurisdiction § 3672, at 431-33
>       (1985)).
>
>       Therefore, a plaintiff with in personam
>       maritime claims has three choices: He may file
>       suit in federal court under the federal court's
>       admiralty jurisdiction, in federal court under
>       diversity jurisdiction if the parties are diverse
>       and the amount in controversy is satisfied, or in
>       state court. . . .

Ghotra by Ghotra v. Bandila Shipping, Inc., 113 F.3d 1050, 1054 (9th Cir. 1997) (brackets in Ghotra).

Here, Saldin asserts in personam claims and properly invoked the savings to suitors clause in the Complaint. Because this Court cannot exercise diversity jurisdiction over this case, Saldin's invocation of the savings to suitors clause remains effective.

For all of the reasons stated above, this case must be remanded.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand Case to State Court, filed August 21, 2024, is HEREBY GRANTED. The Clerk's Office is DIRECTED to effectuate the remand on **January 15, 2025.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 31 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge

SALDIN VS. HOLO HOLO CHARTERS, INC., ET AL., CIV. NO. 24-00306 LEK-KJM; ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO CASE TO STATE COURT

15